14 F.3d 45
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
John ARIAS, Defendant, Appellant.
 No. 93-1624.
 United States Court of Appeals,
First Circuit.
 January 3, 1994
 
 Appeal from the United States District Court for the District of Rhode Island
 Tina Schneider on brief for appellant.
 Edwin J. Gale, United States Attorney, Margaret E. Curran and Lawrence D. Gaynor, Assistant United States Attorneys, on brief for appellee.
 D.R.I.
 AFFIRMED
 Before Torruella, Boudin and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Defendant-appellant John Arias pled guilty to a charge of possession of an unregistered firearm, see 26 U.S.C. Sec. 5861(d), and a charge of possession of a weapon by a convicted felon, see 18 U.S.C. Sec. 922(g)(1). At sentencing, the district court applied the cross-reference provision of U.S.S.G. Sec. 2K2.1[1] and set appellant's base offense level at 28, based on the applicable guideline for attempted murder. See U.S.S.G. Secs. 2X1.1, 2A2.1. Arias challenges his sentence, claiming that the district court improperly applied the cross-reference provision. Arias also appeals from the imposition of a fine and the cost of supervised release. We affirm.
 
 I.
 
 2
 We take the relevant facts from the pre-sentence investigation report (PSI) and the transcript of the sentencing hearing. See, e.g., United States v. Connell, 960
 
 
 3
 F.2d 191, 192-93 (1st Cir. 1992). On November 15, 1992, at approximately 11:15 p.m., appellant attempted to enter La Frangancia Nightclub in Providence. Harry Van Leuven and Bienvenido Marrero were working a security detail there. The owner of the nightclub asked Van Leuven to remove appellant from the premises because he had caused trouble there in the past. Van Leuven did so, assisted by Marrero. Before departing, appellant said that he would come back and kill Van Leuven.
 
 
 4
 Approximately fifteen minutes later, appellant returned with a loaded sawed-off shot gun and entered the nightclub. He pointed the shotgun at Van Leuven. Marrero grabbed the barrel of the shotgun and jerked it up towards the ceiling. The shotgun fired, blowing a hole in the ceiling. Continuing to hold the shotgun, Marrero pushed appellant outside the club and into the street. There, appellant struggled over the gun with Van Leuven and Marrero. The shotgun discharged again, hitting no one. Shortly thereafter, Van Leuven and Marrero subdued appellant.
 
 
 5
 After Arias pled guilty on February 16, 1993, the PSI was prepared. The report concluded that the base offense level should be set at 28, pursuant to the cross-reference provision of Sec. 2K2.1, because appellant used the shotgun in connection with the offense of attempted murder. Appellant objected to this application of the guidelines, contending that the cross-referenced offense should be aggravated assault.
 
 
 6
 The PSI determined the fine range to be $10,000 to $100,000 pursuant to U.S.S.G. Sec. 5E1.2(c)(3). With respect to appellant's ability to pay a fine, the PSI concluded that "[b]ased upon the defendant's financial profile, it appears that he would have little ability to pay a fine."[2] The report further stated, however, that "[Arias] should be capable of securing employment upon his release." Appellant objected to the "insinuation" that he would be able to pay the costs of supervised release.
 
 
 7
 At sentencing, the district court adopted the factual findings and guideline application in the PSI. After setting the base offense level by reference to the guideline for attempted murder, the district court established the guideline sentencing range at 63-78 months (adjusted offense level-25; criminal history category-II) and imposed a sentence at the bottom end of the sentencing range. In addition, the court imposed a fine of $50 on each count ($100 total), due immediately, plus the cost of supervised release (a total of $4,150.80), to be paid in monthly installments of $115.30 after release from imprisonment.
 
 II.
 
 8
 On appeal, Arias challenges the application of the cross-reference provision. According to Arias, it is ultra vires the power of the Sentencing Commission to punish for conduct that violates state, but not federal, law. Arias also argues that he was denied due process of law because the district court sentenced him for committing an offense, attempted murder, for which he had not been convicted.
 
 
 9
 These claims were not raised below and are, therefore, waived. See United States v. Ortiz, 966 F.2d 707, 717 (1st Cir. 1992), cert. denied, 113 S. Ct. 1005 (1993). Even if we were to address the issues on the merits, we would disagree. Those circuits which have considered whether the cross-reference provision of Sec. 2K2.1 applies to state offenses, as well as federal offenses, have held that it does. See, e.g., United States v. Carroll, 3 F.3d 98, 101-02 (4th Cir. 1993) (concluding that the Sentencing Commission did not exceed its mandate by requiring a cross-reference to a state offense); see also United States v. Anderson, 5 F.3d 795, 802-03 (5th Cir. 1993) (interpreting Sec. 2K2.1(c) to allow a sentencing court to use state offenses to enhance a firearms offense level). Section 2K2.1(c) has also uniformly been interpreted to extend to uncharged conduct. See, e.g., United States v. Corbin, 998 F.2d 1377, 1382-85 (7th Cir. 1993); United States v. Smith, 997 F.2d 396, 397 (8th Cir. 1993); cf. United
 
 
 10
 States v. Blanco, 888 F.2d 907, 909 (1st Cir. 1989) (noting that the guidelines embody "a compromise ... among considerations that favor a 'real offense' sentencing system and those that favor a 'charge offense' system). We have previously rejected the argument that sentencing a defendant on the basis, in part, of uncharged conduct is unconstitutional. United States v. Sanders, 982 F.2d 4, 10 (1st Cir. 1992), cert. denied, 113 S. Ct. 2937 (1993).
 
 
 11
 Appellant also reiterates on appeal his argument below that the district court erred in finding that his conduct while in possession of the firearm amounted to attempted murder rather than assault. We disagree. Proof at sentencing need only be by a preponderance of the evidence. United States v. Jackson, 3 F.3d 506, 509 (1st Cir. 1993). In the instant case, Arias threatened to kill Van Leuven before leaving the nightclub. Shortly thereafter, appellant returned to the club with a sawed-off shotgun-a very lethal weapon at close range-and pointed it directly at Van Leuven. The weapon discharged as the barrel was diverted upwards by Marrero. After the shotgun fired, appellant struggled to retain possession of the weapon. We cannot say, on these facts, that the district court erred in finding that Arias intended to kill, rather than simply frighten, Van Leuven. See United States v. Brewster, 1 F.3d 51, 54 (1st Cir. 1993)
 
 
 12
 (a sentencing court's factbound determinations are reviewed for clear error).
 
 III.
 
 13
 The remaining issue is whether the district court erred in imposing a fine and the costs of supervised release on appellant. Arias contends that the district court should not have imposed any fine or costs because he was indigent, his wife and daughter were receiving welfare benefits, he had a limited educational and employment background, and he was subject to deportation upon release from imprisonment.
 
 
 14
 We discern no error. Both 18 U.S.C. Sec. 3572(a) and U.S.S.G. 5E1.2(d)(2) contemplate that a defendant's "earning capacity" should be considered in determining whether to impose a fine, as well as the amount. Appellant is twenty-nine years old and is in good health. He will be approximately thirty-four years old when he is released from prison. Although he did not finish high school, Arias completed a certificate program in machine processing. He was employed at the time of his arrest and reported an income of $640 per month. The PSI concluded that he should be able to secure employment upon his release from incarceration.
 
 
 15
 Under the circumstances, we find that the district court acted well within its discretion in imposing a $100 fine and the costs of supervised release. See United States v. Savoie, 985 F.2d 612, 620 (1st Cir. 1993) (imposition of fine under the guidelines is reviewed for abuse of discretion). The fact that the district court imposed only a nominal fine and did not require Arias to pay government costs during incarceration reflects an appreciation by the court of appellant's financial status. See, e.g., United States v. Pilgrim Mkt. Corp., 944 F.2d 14, 23 (1st Cir. 1991). Should the appellant be unable to pay even this minimal amount, and should the government seek to incarcerate him for nonpayment, appellant would have ample administrative remedies at his disposal. See, e.g., United States v. Levy, 897 F.2d 596, 598 (1st Cir. 1990); Santiago v. United States, 889 F.2d 371, 373-74 (1st Cir. 1989) (per curiam); see also United States v. Dominguez, 951 F.2d 412, 416 (1st Cir. 1991) ("an indigent defendant cannot be held in prison for failure to pay a fine"), cert. denied, 112 S. Ct. 1960 (1992).
 
 
 16
 Affirmed. See Loc. R. 27.1.
 
 
 17
 (1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, ... apply-
 
 
 18
 (A) Sec. 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above; ...
 
 
 
 [1]
 The guideline states in relevant part:
 (c) Cross Reference
 U.S.S.G. Sec. 2K2.1(c)(1)(A) (Nov. 1992).
 
 
 [2]
 Arias, a twenty-nine year old, was married and had one child. He reported that he had no assets, and that he owed $700 in medical bills. His employment history was sparse and consisted primarily of low-paying factory jobs. He listed both his monthly income and expenses at $640